### UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF WISCONSIN
### MADISON DIVISION

| | |
|---|---|
| DAVID ANDERSON, | ) Case No.: 18-cv-706 |
| | ) |
| Plaintiff, | ) **COMPLAINT** |
| | ) |
| vs. | ) |
| | ) |
| SELECT PORTFOLIO SERVICING INC., | ) **Jury Trial Demanded** |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

## INTRODUCTION

1.      This class action seeks redress for collection practices that violate the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq*. ("RESPA"), and Wisconsin common law.

## JURISDICTION AND VENUE

2.      The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 2614 and 28 U.S.C. §§ 1331, 1337, and 1367.  Venue in this District is proper in that Defendants directed their mortgage servicing efforts into the District, and the relevant property is located within the District.

## PARTIES

3.      Plaintiff David Anderson is an individual who resides in the Western District of Wisconsin (Iowa County).

4.      Defendant Select Portfolio Servicing, Inc. ("SPS") is a foreign business corporation with its principal place of business located at 3217 S. Decker Lake Drive, Salt Lake City, Utah 84119.

5.      SPS does substantial business in Wisconsin and maintains a registered agent for service of process at Corporation Service Company, 8040 Excelsior Drive, Suite 400, Madison, Wisconsin 53717.

6.      SPS services mortgage loans, and has represented itself to Plaintiff as the current servicer of the mortgage on Plaintiff's home.

## FACTS

7.      On or about December 31, 2002, Plaintiff entered a mortgage loan agreement with Citicorp Trust Bank, FSB in the principal sum of $74,274.26, which mortgage loan was secured by 114 East Jewett, Dodgeville, Wisconsin 53533.  A copy of this mortgage loan agreement is attached to this complaint as Exhibit A.

8.      Upon information and belief, the mortgage agreement was serviced by CitiMortgage from the date of execution until on or around February 1, 2017.

9.      Throughout this period, Plaintiff was making his mortgage payments, including a substantial overpayment to pay down principal.  Although Plaintiff's monthly payments were scheduled to be in the amount of $534, Plaintiff was actually paying $550 or $600 each month via Automated Clearing House ("ACH") withdrawal.

10.     Upon information and belief, on or about January 6, 2017, CitiMortgage processed Plaintiff's $600 payment, applying $534 to the regular mortgage payment amount, and $66 towards "Additional Principal Received."

11.     On or about January 12, 2017, CitiMortgage mailed Plaintiff a mortgage account statement, which stated that Plaintiff owed a "Delinquent Amount" of $36.00 in addition to his "Regular Monthly Payment" of $534.00.  A copy of this statement is attached to this complaint as Exhibit B.

12.    On or about January 26, 2017, SPS mailed Plaintiff a "Servicing Transfer Notice" letter, which stated that "the servicing of your 1st mortgage account will be transferred from CitiMortgage (prior servicer) to Select Portfolio Servicing, Inc. (SPS), effective 02/01/2017."  A copy of this letter is attached to this complaint as Exhibit C.

13.    Upon information and belief, as of January 12, 2017, Plaintiff's account was not "delinquent" in the amount of $36.

14.    Upon information and belief, when CitiMortgage and SPS agreed that servicing rights and responsibilities for Plaintiff's mortgage would be assigned by CitiMortgage to SPS, CitiMortgage and/or SPS applied an anticipated $36.00 "Property Valuation" fee to Plaintiff's loan.

15.    Upon information and belief, there is no reason that Plaintiff should be responsible for paying this $36 fee, as Plaintiff was not delinquent on his loan in any way.

16.    Upon information and belief, sometime on or around February 1, 2017, CitiMortgage did, in fact, assign servicing rights and duties to Defendant SPS, and SPS began servicing Plaintiff's mortgage.

17.    On or about February 7, 2017, Plaintiff made his monthly $600 payment via ACH withdrawal.

18.    Upon information and belief, SPS held this payment in escrow for more than a month prior to its processing.

19.    On or about February 15, 2017, SPS mailed Plaintiff a mortgage account statement, which stated that Plaintiff made a $600 payment to an "Unapplied Balance," on February 10, 2017.  A copy of this mortgage statement is attached to this complaint as Exhibit D.

20.     On or about March 21, 2017, SPS mailed Plaintiff a mortgage account statement. A copy of this mortgage statement is attached to this complaint as Exhibit E.

21.     Exhibit E states that, as of February 16, 2017, Plaintiff's $600 payment was still applied to an "Unapplied Balance," and that the "Total Balance" as of February 16, 2017 was $37,244.18.

22.     Exhibit E also states that, on March 7, 2017, Plaintiff made another $600 payment to an "Unapplied Balance," making a total "Unapplied Balance" of $1,200.

23.     Upon information and belief, Exhibit E also states that, later on March 7, 2017, Plaintiff's $1,200 "Unapplied balance" was applied to Plaintiff's loan.

24.     The itemized breakdown of these payments is patently confusing, and it is unclear how interest was calculated, and whether SPS charged Plaintiff interest on principal amounts that were, in fact, paid by Plaintiff's February 2017 payment, which was not applied until on or about March 7, 2017.

25.     On or about July 18, 2017, Plaintiff mailed SPS a Qualified Written Request ("QWR") letter.  A copy of this qualified written request is attached to this complaint as Exhibit F.

26.     Plaintiff's QWR requested a copy of Plaintiff's loan account history, "including all payments, interest charges, late fees, other fees, and any other adjustments made to this account since the inception o f this loan."

27.     Plaintiff's QWR further requested a detailed accounting to include all amounts "paid out of the escrow account, and how all payments were applied."

28.     Plaintiff's QWR expressly requested that SPS provide information "over the entire life of the loan."

4

29.     On or about September 7, 2017, SPS mailed Plaintiff a letter in response to Plaintiff's QWR.  A copy of this letter is attached to this complaint as Exhibit G.

30.     Exhibit G confirmed that SPS received Plaintiff's QWR letter on July 21, 2017.

31.     Exhibit G states that "You requested a copy of the payment history.  Enclosed is a copy of the SPS Transaction History and Citi Mortgage Account History (prior servicer) for your review."

32.     The Citi Mortgage account history that SPS enclosed with Exhibit G details the account history through March 6, 2007.

33.     Although the Citi Mortgage account history that SPS enclosed with Exhibit G details the account history through March 6, 2007, Plaintiff's loan was executed on December 31, 2002, and Plaintiff made payments during the period between December 31, 2002 and March 6, 2007.

34.     On or about November 13, 2017, Plaintiff mailed SPS another QWR letter.  A copy of this qualified written request is attached to this complaint as Exhibit H.

35.     Plaintiff's second QWR noted that Plaintiff, "previously requested a 'copy of my loan account history, including all payments, interest charges, late fees, other fees, and any other adjustments made to this account since the inception of this loan."

36.     Plaintiff's second QWR further noted "I did not receive a complete response.  Specifically, I did not receive an account history dating back to the inception of the loan.  I only received information going back to 2008.  I request information covering the entire life of the loan."

37.     On or about January 5, 2018, SPS mailed Plaintiff a letter in response to Plaintiff's second QWR.  A copy of this letter is attached to this complaint as Exhibit I.

38.     Exhibit I confirmed that SPS received Plaintiff's second QWR on November 17, 2017.

39.     Exhibit I states that "SPS has received and responded to these same or similar disputes from you.  We feel these issues raised have been addressed and resolved through our previous communications.  On September 7, 2017.  SPS responded to your concerns."

40.     Exhibit I further states that "You are requesting information pertaining to the prior-prior servicer and SPS does not have access to this information."

41.     Exhibit I further states that "The remaining documentation requests are overbroad and unduly burdensome, and will not be fulfilled."

42.     Exhibit I represents that SPS "does not have access" to a record of Plaintiff's account history for the first five years.

43.     Exhibit I does not provide any explanation or clarification that explains a record of Plaintiff's account history prior to March 6, 2007 is unavailable or cannot be obtained.

44.     Exhibit I does not provide any contact information for a person who can provide assistance to Plaintiff in obtaining a record of his account history prior to March 6, 2007.

45.     Exhibit I does not provide any explanation or clarification why a simple record of Plaintiff's account history prior to March 6, 2007 would be "overbroad and unduly burdensome."

46.     Exhibit I represents that SPS has no way of determining whether Plaintiff made any payments before March 6, 2007.

47.     Exhibit I represents that SPS has no way of determining whether Plaintiff paid his mortgage in full before March 6, 2007.

### *RESPA*

6

48.     Congress passed the Real Estate Settlement Procedures Act ("RESPA") in 1974 to protect homeowners by assisting them in becoming better educated while shopping for real estate services, and eliminating kickbacks and referral fees, which add unnecessary costs to settlement services.

49.     RESPA requires lenders and others involved in mortgage lending to provide borrowers with pertinent and timely disclosures regarding the nature and costs of a real estate settlement process.

50.     RESPA also requires that mortgage servicers respond to borrower inquiries, including qualified written requests for information relating to the servicing of the mortgage loan.  *See* 12 U.S.C. § 2605(e).

51.     RESPA creates substantive rights for consumers, including the right to information upon request.  For this reason, and to encourage consumers to bring RESPA actions, Congress authorized an award of statutory damages for violations "in the case of a pattern or practice of noncompliance."  12 U.S.C. § 2605(f).

52.     12 U.S.C. § 2605(e)(2) states that, not later than 30 days after receipt of the QWR, the servicer shall---

(A)  make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);

(B)  after conducting an investigation, provide the borrower with a written explanation or clarification that includes--

(i)  to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and

(ii)  the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or

(C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--

> (i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and

> (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

### *Wisconsin Common Law of Accounting*

53.    Under Wisconsin common law, a loan servicing agent is required to provide the details of how it has applied payments toward that loan.

54.    Where a loan servicing agent does not provide the details of how it has applied payments toward that loan in sufficient detail, the borrower has a cause of action for accounting.

55.    The Wisconsin Supreme Court has stated:

A complaint for an accounting and for the recovery of the amount of money found to be due on such accounting which involves numerous items of property for which the defendant is sought to be charged, which items of property came into the control of the defendant in different ways, some by fraud and others innocently, and which seeks a rescission of certain conveyances of land and the return of the ostensible title to the plaintiff, sets forth but a single cause of action, the different kinds of relief sought being simply necessary adjuncts to the main purpose of compelling an accounting for that which the defendant wrongfully detains.

*American Can Co. v. Stare*, 138 N.W. 67, 68 (Wis. 1912) (citing *Somervaill v. McDermott*, 93 N.W. 553 (Wis. 1903).

### COUNT I – RESPA

56.    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

57.    Plaintiff submitted a qualified written request to Defendant, requesting a record of Plaintiff's account history.

58.    SPS failed to provide any details of Plaintiff's account history or any record of payments on Plaintiff's mortgage prior to March 6, 2007.

59.     Plaintiff submitted a second QWR to Defendant, specifically directing SPS to its failure to provide any records prior to the March 6, 2007 date.

60.     Defendant again refused to provide records of Plaintiff's account history.

61.     Defendant characterized a request for a simple transaction history, itemizing payments Plaintiff made on his mortgage as "overbroad and unduly burdensome."

62.     Defendant failed to conduct an investigation in response to Plaintiff's QWR.

63.     Defendant failed to provide the information requested, or an explanation of why the information requested was unavailable or cannot be obtained by Defendant.

64.     Defendant failed to provide contact information of someone who could provide assistance to Plaintiff.

65.     Defendant has exhibited a pattern and practice, demonstrating its willful noncompliance with the requirements of RESPA.

66.     Defendant violated 12 U.S.C. § 2605(e)(2).

## COUNT II – Common Law of Accounting

67.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

68.     Defendant is the servicing agent for Plaintiff's mortgage loan.

69.     Defendant failed to provide a clear accounting for payments Plaintiff made on the account since Defendant began servicing the loan.

70.     Defendant must provide a detailed accounting under Wisconsin law.

## JURY DEMAND

71.     Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs requests that the Court enter judgment in favor of Plaintiff and

against Defendant for:

   i.  actual damages;

  ii.  statutory damages;

 iii.  attorneys' fees, litigation expenses and costs of suit; and

 iv.  such other or further relief as the Court deems proper.

Dated:  August 23, 2018

**ADEMI & O'REILLY, LLP**

By:    /s/ Jesse Fruchter_____
       Robert K. O'Reilly (SBN 1027032)
       Jesse Fruchter (SBN 1097673)
       Mark A. Eldridge (SBN 1089944)
       3620 East Layton Avenue
       Cudahy, WI 53110
       (414) 482-8000
       (414) 482-8001 (fax)
       roreilly@ademilaw.com
       jfruchter@ademilaw.com
       meldridge@ademilaw.com