IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DAVID ANDERSON,

                Plaintiff,

v.

SELECT PORTFOLIO SERVICING, INC.,

                Defendant.

OPINION and ORDER

18-cv-706-jdp

---

Plaintiff David Anderson alleges that defendant Select Portfolio Services (SPS), his mortgage servicer, charged him illegal late fees, and failed to provide him certain statutorily required account history disclosures when asked. He filed this proposed class action, asserting claims under the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601 *et seq.*, and Wisconsin common law.

SPS has moved to compel arbitration under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, citing a binding arbitration clause in the mortgage agreement between the parties. Dkt. 16. Anderson concedes that he signed the arbitration agreement in question but contends that its provisions are unconscionable.

The court concludes that Anderson has failed to show that the arbitration agreement is unconscionable, so it will grant defendant's motion. Defendant asks that the case be stayed during the pendency of the arbitration, but this court typically dismisses cases without prejudice when all of the claims raised are subject to arbitration. *See Olstad v. Chase Auto Fin. Corp.*, No. 17-cv-236, 2018 WL 501611, at *3 (W.D. Wis. Jan. 22, 2018). If either side wishes to confirm or challenge the arbitration decision at the conclusion of the proceedings, that party may move to reopen the case then.

BACKGROUND

Anderson entered into a mortgage agreement with Citicorp Trust Bank, FSB in 2002. In 2017, the mortgage was transferred from Citcorp to SPS, Anderson's current servicer. The terms of the mortgage agreement remained unchanged. The agreement contained the following arbitration clause:

> Notice of Arbitration Provision. This arbitration provision provides that all disputes between borrower and lender, except those specified below, will be resolved by mandatory, binding arbitration. You thus give up your right to go to court to assert or defend your rights (except for matters that are excluded from arbitration as specified below). Your rights will be determined by a neutral arbitrator and not a judge or jury. You are entitled to a fair hearing, but the arbitration procedures are simpler and more limited than the rules applicable in court.

Dkt. 11-1, at 5. The agreement specifies three types of excluded claims—actions necessary to obtain a judicial order for the purpose of foreclosing, repossessing, or otherwise establishing title for a property interest; non-class actions seeking $15,000 or less in total monetary relief; and non-class actions brought in small claims court.

Five other provisions of the arbitration agreement are relevant to Anderson's unconscionability arguments. First, the agreement contains a class action waiver. Second, it provides that arbitration fees, costs, and expenses may be shifted to the mortgagor "if the arbitrator determines that the Claim was made in bad faith or lacks any justification on [the borrower's] part." *Id.* Third, the agreement provides that the arbitrator will decide jurisdictional and arbitrability disputes. Fourth, it provides that the party initiating arbitration may choose between one of three arbitration firms: JAMS, the American Arbitration Association (AAA), and the National Arbitration Forum (NAF). Fifth, it includes a severability provision, which provides that if an arbitrator or court finds any portion of the arbitration provision

unenforceable, that does not impair or affect the enforceability of the other terms of the arbitration agreement.

ANALYSIS

Under the "saving's clause" of the Federal Arbitration Act, 9 U.S.C. § 2, an arbitration agreement may be invalid if it fails to satisfy "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1622 (2018) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). Anderson contends that his arbitration agreement with SPS is invalid because it is unconscionable.

To determine whether an arbitration agreement is unconscionable, the court looks to the state law that governs contract formation, *Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1130 (7th Cir. 1997), which in this case is Wisconsin. In Wisconsin, unconscionability means "the absence of meaningful choice on the part of one of the parties, together with contract terms that are unreasonably favorable to the other party." *Wis. Auto Title Loans, Inc. v. Jones*, 2006 WI 53, ¶ 32, 290 Wis. 2d 514, 714 N.W.2d 155. The doctrine exists to prevent "oppression or unfair surprise," but not "disturbance of allocation of risks because of superior bargaining power." *Id.* (quoting Richard A. Lord, *Williston on Contracts* § 18.8, at 49–50 (4th ed. 1998)). "A contract is unconscionable when no decent, fair-minded person would view the result of its enforcement without being possessed of a profound sense of injustice." *Hankee v. Menard, Inc.*, No. 07-C-661-C, 2002 WL 32357167 at *4 (W.D. Wis. Apr. 15, 2002) (quoting *Foursquare Props. Joint Venture I v. Johnny's Loaf & Stein, Ltd.*, 116 Wis. 2d 679, 681, 343 N.W.2d 126 (Ct. App. 1983)).

3

In assessing whether a contractual provision is unconscionable, a court weighs procedural and substantive factors on a case-by-case basis. *Jones*, 2006 WI 53, ¶¶ 29, 33. Procedural unconscionability requires the court to examine the contract's formation "to determine whether there was 'a real and voluntary meeting of the minds.'" *Clemins v. GE Money Bank*, No. 11-CV-00210, 2012 WL 5868659, at *4, (E.D. Wis. Nov. 20, 2012) (quoting *Jones*, 2006 WI 53, ¶ 34). Relevant factors include the "age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party [and] whether alterations in the printed terms were possible." *Discount Fabric House of Racine, Inc. v. Wis. Telephone Co.*, 117 Wis. 2d 587, 602, 345 N.W.2d 417 (1984). Substantive unconscionability refers to "fairness and reasonableness of the contract provision subject to challenge." *Jones*, 2006 WI 53, ¶ 35. "The balance tips in favor of unconscionability when there is a certain quantum of procedural plus a certain quantum of substantive unconscionability." *Leasefirst v. Hartford Rexall Drugs, Inc.*, 168 Wis. 2d 83, 88–89, 483 N.W.2d 585 (Ct. App. 1992). As the party opposing arbitration, Anderson bears the burden of establishing that the arbitration clause is unconscionable. *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000).

### A. Procedural unconscionability

To show procedural unconscionability, Anderson says that the agreement is an adhesion contract, i.e., a form contract drafted by the party with superior bargaining strength and presented to the less powerful party on a take-it-or-leave it basis. Anderson had "no opportunity to dicker over the pre-printed terms," nor was he permitted to opt out of the arbitration provision or class action waiver. Dkt. 21, at 17. "Ordinarily, however, adhesion contracts are

valid." *Jones*, 2006 WI 53, ¶ 53. Unconscionability requires something more than showing that the drafting party had "superior bargaining power." *Id.* ¶ 32.

Anderson contends that the lender unfairly sprung the arbitration provision on him at the last minute. Specifically, he says that he didn't have any opportunity to review the loan paperwork containing the arbitration provision until the lender's representative brought it to his house on the day of closing, at which point he only had a few minutes to review it. The lender's representative did not explain the terms of the refinancing agreement or discuss the meaning, scope, or binding nature of the arbitration clause with Anderson. But Anderson does not contend that he didn't understand the purpose and effect of the clause. (Indeed, he says he "did not want to sign the arbitration agreement at closing," Dkt. 21, at 6, which indicates that he did understand it.) And he provides no information about his age, education, intelligence, or level of business acumen that would suggest that his capacity to make an informed decision was somehow compromised.

Anderson says that, by the time of closing, he felt that he had "no meaningful option to use some other lender, because he needed to refinance and lower his monthly payments, the lender had already performed a hard inquiry into his credit, and he would have had to pay for a second appraisal" had he backed out of the deal. Dkt. 21, at 18. The notion that a contract may be rendered procedurally unconscionable when a borrower lacks access to other lenders has some purchase in the case law. *See, e.g.*, *Jones*, 2006 WI 53, ¶¶ 92–93 (Butler, J., concurring) (observing that high-interest auto title loans are often the only option available to debt-strapped consumers, which can deprive consumers of meaningful choice). But Anderson doesn't contend that he had no other options because there were no other lenders in the market willing and able to refinance his mortgage. Rather, he contends that he felt that his options

5

were limited because of the sunk costs of a credit check and an appraisal. Anderson cites no authority that supports the notion that the mere prospect of having to spend more time or money to find a better refinancing option is sufficient to render an agreement procedurally unconscionable. The court's own review of relevant case law indicates that such costs aren't nearly enough. *See, e.g.*, *Schultz v. Epic Sys., Inc.*, No. 16-cv-797-WMC, 2019 WL 1332580, at *5 (W.D. Wis. Mar. 25, 2019) (requirement that employees either accept the terms of an arbitration agreement or quit does not deprive them of a meaningful choice).

At bottom, Anderson's contentions about procedural unconscionability boil down to frustration about the unequal bargaining power between him and his corporate lender. But the Supreme Court "has cautioned that a naked claim of 'unequal bargaining power' . . . is not a reason to invalidate arbitration agreements." *Hankee*, 2002 WL 32357167, at *4 (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991)). Without more, Anderson cannot meet his burden of demonstrating that the agreement he signed was procedurally unconscionable.

### B. Substantive unconscionability

Anderson has failed to establish that the arbitration agreement was procedurally unconscionable, which means that the unconscionability analysis could end there. *See Jones*, 2006 WI 53, ¶ 33. But even had Anderson made a showing of procedural unconscionability, the court would conclude that the agreement was not substantively unconscionable. "Substantive unconscionability focuses on the one-sidedness, unfairness, unreasonableness, harshness, overreaching, or oppressiveness of the provision at issue." *Id.* ¶ 59. A contract is substantively unconscionable if its terms "are unreasonably favorable to the more powerful party." *Id.* ¶ 36. That is not the case here.

Anderson offers seven reasons why the arbitration clause is substantively unconscionable. First, he says that the arbitration provision "has an absurdly broad scope" because it requires arbitration of "any claims Plaintiff may have against the lender or any of its related entities, whether or not those claims are based on the mortgage itself, or even based on loans in existence at the time the arbitration agreement was executed." Dkt. 21 at 19. But the breadth of the agreement is not the issue; it is whether the agreement is unreasonably favorable to the more powerful party. Anderson cites no authority suggesting that an arbitration agreement can be rendered substantively unconscionable simply because it applies broadly.

Second, Anderson contends that the arbitration agreement asymmetrically forecloses consumers' access to the courts while preserving access for lenders. He points to the agreement's three carve-outs, which exempt foreclosure actions, small-claims actions, and claims seeking less than $15,000 from arbitration. Although these carve-outs are neutral on their face, Anderson argues that in practice, they give lenders more access to courts than borrowers. That is plainly the case as to the exclusion for foreclosure claims, which only a lender is in a position to bring. But such a carve-out is made necessary by Wisconsin's foreclosure procedures, which provide that a foreclosure may only be effected through court order. *See* Wis. Stat. § 846.01. And courts have upheld similar carve-outs against unconscionability challenges in other cases. *See, e.g.*, *Estep v. World Fin. Corp. of Ill.*, 735 F. Supp. 2d 1028, 1031–33 (C.D. Ill. 2010); *Salley v. Option One Mortg. Corp.*, 592 Pa. 323, 345, 925 A.2d 115, 128 (2007) (concluding that there was "a facially apparent business justification for [a foreclosure] exception, as the safeguards thereby preserved assure regularity and consistency for the benefit of both lender and borrower, and accordingly, there are sound pragmatic and policy reasons why foreclosure proceedings should be pursued in a court of law.").

Anderson points to the provisions that exempt small claims actions and claims seeking less than $15,000 from arbitration and says that they render the agreement unconscionably one-sided because "RESPA, TILA, and several other key consumer protection statutes are federal in nature, [so] the claim could be removed from small claims court, at which point the 'small claims court jurisdiction' would no longer apply." *Id.* at 21. That is true, but it is beside the point. The agreement gives both lenders and borrowers equal license to litigate small-dollar actions in court. That borrowers cannot bring certain types of consumer actions in court says nothing about whether lenders disproportionately benefits from the carve-out for small-dollar claims. Anderson doesn't explain how exempting such claims from arbitration disproportionately accrues to the benefit of the lender.

Third, Anderson says that the agreement is unfair because of its class action waiver. He acknowledges that such waivers are not per se unconscionable, but nonetheless contends that the waiver "is relevant to whether the arbitration agreement as a whole is substantively unconscionable" when considered in light of "other terms that appear commercially unreasonable." *Id.* at 20. This argument carries little weight in light of *Concepcion*, 563 U.S. at 341, and *Lewis*, 138 S. Ct. at 1622, both of which make clear that class action waivers are enforceable and do not raise unconscionability concerns.

Fourth, Anderson points to the agreement's fee-shifting provision. Although the presumption under the agreement is that the lender "will pay to the Administrator all . . . administrative costs of the arbitration proceeding" (other than the initial filing fee if the borrower initiates the proceeding), the agreement permits the arbitrator to shift the arbitration costs and fees to the consumer if the arbitrator determines that the suit "lacks any justification on [the borrower's] part." Dkt. 11-1, at 5. Anderson says that this phrase is ambiguous and

8

could be invoked to justify shifting fees to consumers who bring nonfrivolous actions. But the Wisconsin court of appeals has upheld a similar fee shifting regime against charges of substantive unconscionability. *See Cottonwood Fin., Ltd. v. Estes*, 2012 WI App 12, ¶ 19, 339 Wis. 2d 472, 810 N.W.2d 852 (provision requiring borrower who loses in arbitration to reimburse lender for amount that would have been assessed as court costs had the dispute been resolved in state court was not substantively unconscionable). Anderson makes no attempt to distinguish *Cottonwood*. Parties are free to contract around the American Rule without it raising unconscionability concerns. *See Estate of Kriefall v. Sizzler USA Franchise, Inc.*, 2012 WI 70, ¶ 72, 342 Wis. 2d 29, 816 N.W.2d 853.

Fifth, Anderson contends that the arbitration provision is substantively unconscionable because it "directs questions about its own enforceability to the arbitrator even though such disputes have long been resolved by the courts as a matter of law." Dkt. 21, at 22. But the actual language of the agreement reads: "Jurisdictional and arbitrability disputes, including disputes over the existence, validity, interpretation or scope of this Provision under which arbitration is sought, shall be submitted to and ruled on by the arbitrator, *unless the relevant law requires that a court of competent jurisdiction make such determination*." Dkt. 5-1, at 6 (emphasis added). Anderson ignores this qualifer. And even if the agreement didn't contain this language, it wouldn't matter; such clauses have no legal effect and impose no impediment on a court's ability to assess the enforceability of an arbitration clause. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S 440, 445–46 (2006).

Sixth, Anderson contends that the agreement's severability clause is unconscionable "because it encourages the contract drafter to include terms that it knows or believes may be unenforceably one-sided to intimidate the signatory into foregoing contractual rights and

9

undermine the objectives of the unconscionability doctrine." Dkt. 21, at 22. But none of the terms Anderson challenges are in fact unconscionable. Anderson cites no authority that supports his contention that the mere presence of a severability clause is enough to render an agreement substantively unconscionable.

Seventh, Anderson contends that the arbitration agreement is substantively unconscionable because NAF, one of the three arbitration firm options it provides, disproportionately sides with lenders and has a "substantial reputation as a pro-business arbitration forum." *Green v. U.S. Cash Advance Ill., LLC*, 724 F.3d 787, 794 n.1 (Hamilton, J., dissenting). Indeed, after the Minnesota Attorney General sued NAF for consumer fraud related to its use of biased arbitrators in 2009, NAF entered into a consent judgment in which it agreed to cease all consumer-arbitration business. *See Riley v. Extendicare Health Facilities, Inc.*, 2013 WI App 9, ¶ 1, 345 Wis. 2d 804, 808, 826 N.W.2d 398, 400.

But the arbitration agreement at issue here provides two alternative forums, JAMS and AAA. Anderson does not contend that arbitration through either of those firms is substantively unconscionable. Instead, he argues that providing for other forums "makes little or no difference" because "the lender is overwhelmingly more likely to be the party initiating arbitration (and choosing the arbitrator as a result)." Dkt. 21, at 24. And it makes no difference that NAF is no longer accepting new consumer arbitration cases, he says, because the substantive unconscionability inquiry is based on "the circumstances existing at the time of the making of the contract." *Jones*, 2006 WI 53, ¶ 36 n.2 (quoting Uniform Commercial Code § 2-302 cmt. 1, 1A U.L.A. 344 (2004)). True enough. But in a case concerning whether a consumer arbitration agreement that identified NAF as the only permissible forum was rendered unenforceable by the 2009 consent decree, the Seventh Circuit held that "the identity of the

Forum as an arbitrator is not 'integral' to arbitration agreements." *Green*, 724 F.3d at 790. By the same logic, the agreement's inclusion of NAF among the available arbitral forums does not render the entire agreement substantively unconscionable. *See, e.g., Clemins*, 2012 WL 5868659, at *6 (rejecting argument that inclusion of NAF as a forum option rendered the agreement substantively unconscionable where agreement also allowed arbitration through AAA).

Anderson has not identified any provisions of the arbitration agreement he signed that are procedurally or substantively unconscionable, so the court must enforce the agreement and dismiss the case without prejudice.

ORDER

IT IS ORDERED that:

1. Defendant Select Portfolio Servicing, Inc.'s motion to compel arbitration and stay the case, Dkt. 16, is GRANTED, and the case is DISMISSED without prejudice.

2. The clerk of court is directed to enter judgment accordingly.

Entered April 4, 2019.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge